UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 23-cr-0002-bhl-1

SAMONE S. THOMAS,

        Defendant.

## ORDER

On November 22, 2022, law enforcement officers searched Defendant Samone Thomas's residence pursuant to a warrant and recovered two firearms. Thomas is a convicted felon and was subsequently indicted on felon-in-possession charges. (ECF No. 1.) She has now moved to suppress the evidence gathered during the search, claiming the warrant was not supported by probable cause. (ECF No. 30.) She also asks for a hearing on the motion under *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id*.) In an August 28, 2023 Report and Recommendation, Magistrate Judge William E. Duffin recommended that the Court deny her motion to suppress and her request for a Franks hearing. (ECF No. 42.) Thomas has objected to the report, insisting she is entitled to a *Franks* hearing and highlighting alleged errors in Judge Duffin's analysis. (ECF No. 44.) Because the record confirms both that probable cause existed to issue the warrant and that Thomas is not entitled to a *Franks* hearing, the Court will adopt Judge Duffin's report and deny Thomas's suppression motion.

## BACKGROUND

In September 2021, law enforcement began investigating allegations that Caring Through Love (CTL), a Prenatal Care Coordination agency, owned by Precious Cruse, had fraudulently submitted false billings for reimbursement to Wisconsin Medicaid. (ECF No. 30-4 at 8-9, ¶¶7, 10, 11.) In connection with that investigation, law enforcement identified Thomas as a "care coordinator" for CTL. (*Id.* at 10-11, ¶17.) Investigators interviewed several of Thomas's CTL clients, who confirmed that records prepared by Thomas to substantiate CTL's billing were false.

(*Id.* ¶¶17-19.) The CTL clients reported generally that they had not received the services purportedly provided from Thomas or anyone else at CTL. (*Id.*)

On November 16, 2022, Federal Bureau of Investigation (FBI) Special Agent Jill Dring and other officers interviewed Thomas. (*Id.* at 11, ¶20.) During the interview, Thomas admitted that billing records containing her name and describing services allegedly provided by her were in fact not accurate or truthful. (*Id.* at 12, ¶22.) Pointing the finger at Cruse, Thomas stated that the entries in the records were written or provided by Cruse. (*Id.*) Thomas described how Cruse had instructed her to fill out the billing sheets and showed Agent Dring a video on Thomas's cell phone (number xxx-xxx-3186, the "target" phone) in which Cruse was instructing her employees on how to fill out billing records for CTL's services.[1] (*Id.* at 12-13, ¶26; *see also* ECF No. 30-6.) Thomas also told the agent that she had communicated with Cruse via text and over Facebook and believed she might still have the Facebook communications on her phone. (ECF No. 30-4 at 12, ¶25.) Thomas also reported how Cruse had paid for Thomas and other care coordinators to travel to Las Vegas and stated she had photographs of that trip on her phone. (*Id.* at 13, ¶27.)

During the interview, Thomas initially agreed to provide the video to law enforcement. (*Id.* ¶28.) At some point, however, she indicated she no longer wanted to continue the interview and left without providing the video. (*Id.*) Later that same day, Agent Dring applied for and obtained an initial warrant to help her locate Thomas's phone. (*Id.* at 14, ¶32.) This initial effort failed to produce useful results; the resulting location information gave law enforcement a radius of approximately 0.5 miles, an area that did not allow them to pinpoint the phone's location. (*Id.*) On November 18, 2022, Agent Dring sought and obtained a cell-site simulator warrant, which she hoped would allow her to identify the location of the target phone with greater particularity. (*See id.* ¶33.) This effort was more successful. The cell-site simulator data showed that the target phone was located at Thomas's home. (*Id.* at 14-15, ¶34.)

On November 21, 2022, Agent Dring went to Thomas's residence and informed her that she had a search warrant authorizing the seizure and search of the phone containing the video

---

[1] The video presented to Agent Dring showed an image of a billing record that included time spent and a description of a service provided. On the video, Cruse instructs the coordinators not to change the sections that detailed the service provided and to only change the portion of the document that included the care coordinator's name and client's name. Thomas explained to Agent Dring that this was standard – the billing forms all included essentially the same information for services provided and Cruse documented the time spent as almost always two hours. Care coordinators were instructed to only fill in their names and their client's name. (ECF No. 30-4 at 12-13, ¶26.) Agent Dring believed the video on Thomas's phone was evidence of health care fraud in violation of 18 U.S.C. § 1347. (*Id.* at 14, ¶30.)

evidence Thomas showed during their meeting. (*Id.*) Thomas was holding a phone in her hand while at the screen door, but told Agent Dring she did not have the phone the agent was looking for, claiming she had left it with probation on her way out of the building when she ceased the interview. (*Id.*) Agent Dring knew Thomas's story was false; the cell-site simulator data showed that the target phone was pinging at her residence. (*Id.*) The agent then asked Thomas to text her from the phone she was holding and, consistent with Thomas's story that it was not the phone the agent was seeking, the text revealed a different phone number. (*Id.*) Agent Dring then left the premises as she did not have a warrant to search Thomas's residence. (*Id.* at 15, ¶35.) Shortly after she left, Agent Dring noticed that the ping location for the target phone had stopped transmitting, suggesting that someone had turned the cell phone off. (*Id.*) Further investigation later revealed that Thomas had canceled service on the phone after speaking with the agent. (*Id.*)

On November 22, 2022, Agent Dring sought and obtained a new warrant, authorizing a search of Thomas's residence and the seizure of all electronic devices found there for evidence of healthcare fraud. (*Id.*; *id.* at 25-26.) Law enforcement sought the expanded warrant because Thomas had taken steps to prevent law enforcement from obtaining her phone. (*See id.* at 15, ¶35.) Although Agent Dring understood that Thomas had a reason to preserve evidence on the target phone that was exculpatory for her, (*id.* ¶37), the agent was concerned that Thomas might transfer relevant evidence from her phone to another electronic device. (*See id.* at 15-16, ¶38.) Based on Agent Dring's training and experience, she knew that people can transfer data, including videos, from cell phones onto computers and other external storage devices. (*Id.*) With the new warrant in hand, law enforcement arrived at Thomas's residence that same day, executed the new warrant, and seized a total of three phones. (ECF No. 49 at 4.) During their search of Thomas's bedroom, the investigators also discovered and seized two firearms. (*Id.* at 4-5.)

On January 4, 2023, Thomas was indicted for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). (ECF No. 1.) On August 7, 2023, Thomas requested a *Franks* hearing, and moved to suppress evidence collected pursuant to the November 22, 2022 warrant. (ECF No. 30.) Judge Duffin considered Thomas's arguments, but ultimately concluded a *Franks* hearing was unnecessary and recommended denying the motion to suppress. (ECF No. 42 at 11.) The Magistrate Judge reasoned that the affidavit supporting the search warrant did not contain any material misrepresentation or omission and established probable cause. (*Id.*) Thomas filed

objections, which the Court deemed timely, and now asks the Court to overrule Judge Duffin's Report and Recommendation. (ECF No. 44.)

## LEGAL STANDARD

The district court reviews, *de novo*, "those portions of [a Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). This "[*d*]*e novo* review requires the district court judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district court "makes the ultimate decision to adopt, reject, or modify" the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 760 (7th Cir. 2009). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## ANALYSIS

As an initial matter, Thomas does not object to the warrant or the search and seizure of her cell phone. Rather, she objects to the expanded scope of the warrant, which also permitted the search and seizure of all of Thomas's electronic devices within her residence. (ECF No. 44 at 2.) Thomas also objects to what she characterizes as Judge Duffin's conclusion that Thomas's desire to consult with an attorney before turning over her cell phone provided a basis for suspecting that she may have inculpatory evidence on other devices or otherwise in her home. (*Id.*) Thomas also contends that Judge Duffin improperly denied a *Franks* hearing. (ECF No. 50 at 7.) Because the subject warrant was supported by probable cause, the Court will overrule Thomas's objections, adopt Judge Duffin's report recommending the motion to suppress be denied, and deny her renewed motion for a *Franks* hearing.

**I.  The Warrant Affidavit Established Probable Cause to Search Thomas's Residence for Electronic Devices.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775-76 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003)). "A search warrant affidavit

establishes probable cause when, based on the totality of the circumstances, it 'sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* at 776 (quoting *Peck*, 317 F.3d at 756). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). That decision is afforded great deference. *See United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Thus, a reviewing court should "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984)). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Thomas does not object to the magistrate judge's recitation of the facts. Those undisputed facts establish probable cause. The facts show that law enforcement sought an expanded search warrant to search Thomas's residence and seize all electronic devices only after Thomas engaged in obstructive behavior. She affirmatively lied to Agent Dring about the location of the target phone, which undisputedly contained evidence of healthcare fraud, and then took additional steps to conceal the location of the phone by turning it off and canceling the service. From her training and experience and her interactions with Thomas, Agent Dring knew that Thomas had more than one phone, that the service to the target phone had been turned off and cancelled, and that data, including videos, can be transferred between electronic devices. This is enough to support probable cause for the challenged search warrant.

Defense counsel acknowledges that Thomas "apparently attempted to mislead law enforcement - - but in a manner that transparently evinced that the target phone was still in her

possession at her residence." (ECF No. 44 at 4.)  This does not help her.  Thomas's uncooperative conduct led Agent Dring to reasonably believe that Thomas may have transferred the evidence to a different cell phone or onto a computer or other external storage device, justifying the expansion of the warrant.  Thomas has only herself to blame.  Her admitted attempt to mislead Agent Dring led the agent to secure an expanded warrant to make sure that the inculpatory information she observed on Thomas's phone would be seized either on the target phone or potentially on another electronic device if Thomas had transferred the video.  The agent's conduct was perfectly reasonable, and the warrant was properly issued.

Magistrate Judge Duffin noted that investigators logically inferred that Thomas hid her phone from investigators when they returned with a warrant because the phone likely contained something else inculpatory in addition to the video, and if her phone contained inculpatory evidence, "then there may well be other inculpatory evidence on other devices or otherwise in her home."  (ECF No. 42 at 9.)  Thomas is simply incorrect in contending that this conclusion was "wholly unjustified."  (ECF No. 44 at 3.)  Thomas is also off base in arguing that her desire to consult with an attorney somehow precluded law enforcement from obtaining authorization for a further search.  (*See id.* at 2-3.)  Thomas may have wanted to consult with her attorney before turning over her phone, but when faced with a warrant she chose to lie to the agent, falsely claiming that the phone was with probation.  Agent Dring's response to the lie was to get a broader warrant to preserve likely evidence.  Thomas could have told the truth and turned over the phone, which would have obviated the need for a broader warrant.  But she chose deception over truth and only has herself to blame for the consequences.  A judge considering an affidavit may draw reasonable inferences without running afoul of the Fourth Amendment.  *See United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008).  It was reasonable to conclude that one possible inference for Thomas not turning over her phone was because it contained inculpatory evidence in addition to the video.  Thomas's reference to a need to speak with counsel does not shield her from law enforcement officers' reasonable efforts to obtain evidence.

Agent Dring also had reason to believe that Thomas had more relevant evidence of healthcare fraud.  Thomas had informed Agent Dring that she communicated with Cruse via text and Facebook and had photographs of a company trip to Las Vegas paid for by Cruse.  Although law enforcement did not know the extent of all the evidence, such evidence easily could be stored on any electronic device.  The warrant justifiably authorized the seizure of "computers, cellphones,

and electronics capable of communication or storage" and described with particularity the places and objects to be searched and seized. (ECF No. 30-4 at 25); *see also United States v. Vizcarra-Millan*, 15 F.4th 473, 502 (7th Cir. 2021) ("The particularity requirement 'ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause.'") (quoting *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998)). The affidavit established at least a fair probability that the target cell phone and other electronic devices at Thomas's residence would contain evidence of healthcare fraud. That provides the nexus between the evidence sought and the place to be searched. *See United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018). The Court concludes there was probable cause to search Thomas's residence for electronic devices, in addition to the target phone. *See Illinois v. Gates,* 462 U.S. 213, 243 n.13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."); *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009) ("Probable cause is established when, based on the totality of the circumstances, [an] affidavit sets forth sufficient evidence to persuade a reasonably prudent person that a search will uncover evidence of a crime.").

**II.     Even if the Warrant Was Not Supported by Probable Cause, the Good Faith Exception to the Exclusionary Rule Applies.**

Even if the warrant was defectively overbroad (and the Court holds the opposite), the evidence seized pursuant to the warrant would not be subject to suppression because the executing officer's reliance on the warrant was objectively reasonable and in good faith. *See United States v. Leon*, 468 U.S. 897, 905 (1984). "The decision to seek a warrant is prima facie evidence that the officer was acting in good faith." *United States v. Wiley*, 475 F.3d 908, 917 (7th Cir. 2007). To rebut this presumption, the defendant must show that the issuing magistrate judge "wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Id.* Further, "an officer cannot be expected to question the magistrate[ judge]'s probable cause determination." *Leon*, 468 U.S. at 921. Thomas does not challenge the government's argument that the "agents reasonably relied upon the validly-issued search warrant and executed that warrant as it was written in good faith." (ECF No. 49 at 11-12.) Accordingly, even if probable cause was lacking, the good faith exception would apply, precluding suppression of the seized evidence.

### III. The Defendant Is Not Entitled to a *Franks* Hearing Because She Has Not Shown that the Omitted Statements Were Necessary to Support a Finding of Probable Cause.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court recognized a criminal defendant's right, in limited circumstances, to challenge the veracity of statements made in an affidavit supporting a search warrant. A defendant may dispute the accuracy of an allegedly faulty affidavit at a so-called *Franks* hearing provided she first makes a "'substantial preliminary showing' that: (1) the affidavit contained a materially false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155-56). This standard also applies when an affidavit is challenged on the grounds that key facts were omitted. *See United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984). "What is needed is 'direct evidence of the affiant's state of mind' or else 'circumstantial evidence' of 'a subjective intent to deceive.'" *United States v. Daniels*, 906 F.3d 673, 677 (7th Cir. 2018) (per curiam) (quoting *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014.) To make the necessary preliminary showing, "the evidence must show that the officer submitting the [affidavit] perjured [herself] or acted recklessly because [she] seriously doubted or had obvious reason to doubt the truth of the allegations." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009).

Thomas contends that the affidavit in support of the search warrant improperly failed to inform the court that Thomas had: (1) expressed a willingness to provide the video once she had an opportunity to speak with a lawyer; (2) explained that she completed work documents using only work computers; and (3) moved to a different home after she left her employment at CTL. (ECF No. 50 at 1-2.) Thomas contends that these facts, if known, should have had an impact on the probable cause analysis.

The Magistrate Judge correctly determined that these omitted facts did not undermine the existence of probable cause to search Thomas's home. Judge Duffin also noted that Thomas wanting to consult with an attorney could be regarded as a stall tactic to allow time to dispose of her phone. (ECF No. 42 at 9.) While the Court acknowledges that Thomas may have wanted to consult with an attorney before turning over her cell phone for legitimate reasons, such as maintaining her privacy and understanding her legal exposure, an innocent explanation does not necessarily negate probable cause. Agent Dring's omission of these facts, including that Thomas wanted to consult with an attorney, was not necessary to a finding of probable cause. Agent Dring

established probable cause for the search warrant based on her ten years of experience and the information she gathered during an investigation, including her interview of Thomas and Thomas's disclosure that she had evidence of healthcare fraud on her phone. None of the omitted facts resulted in the warrant-issuing judge being misled. *See United States v. Woodfork*, 999 F.3d 511, 518 (7th Cir. 2021) (confirming that a substantial preliminary showing requires that the affiant "intentionally or recklessly misled the warrant-issuing judge"). Thomas does not satisfy the first precondition for a *Franks* hearing. She cannot prove any false statements or omissions that were necessary to the determination of probable cause. She is, therefore, not entitled to a *Franks* hearing.

## CONCLUSION

After a *de novo* review of Magistrate Judge Duffin's report and recommendation, the Court overrules Thomas's objections.

Accordingly,

**IT IS HEREBY ORDERED** that Magistrate Judge Duffin's report, (ECF No. 42), recommending that Thomas's Motion to Suppress, (ECF No. 30), be denied is **ADOPTED**.

**IT IS FURTHER ORDERED** that Thomas's Motion to Suppress, (ECF No. 30), is **DENIED**.

**IT IS FURTHER ORDERED** that Thomas's request for a *Franks* hearing, (ECF No. 30), is **DENIED**.

Dated at Milwaukee, Wisconsin on October 17, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge